## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

Case No. 2:20-cv-00402-SPC-MRM

WILLIAM MCCRACKEN AND JANIS MCCRACKEN,

     Plaintiffs,

v.

CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NO.: BW0162517,

     Defendant.

_____/

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON THE BURDEN OF PROOF AND DEFENDANT'S FIRST AFFIRMATIVE DEFENSE

COME NOW, Plaintiffs, WILLIAM MCCRACKEN AND JANIS MCCRACKEN (hereinafter "Plaintiffs"), by and through the undersigned counsel, pursuant to Federal Rules of Civil Procedure 56, and hereby file this Motion for Summary Judgment and, in support thereof, state as follows:

## INTRODUCTION AND SUMMARY OF ARGUMENTS

This matter sounds in a property insurance dispute stemming from a denied Hurricane Irma claim related to the Plaintiffs' property located in Collier County, Florida, ground zero for the landfall of the storm. Plaintiffs are entitled to Summary Judgment in this matter with regards to coverage for damages sustained at the insured property as a result of Hurricane Irma as well as on Defendant's only affirmative defense.[1] First, as the subject policy is a "named perils" policy,

---

[1] While the Defendant has plead a second "affirmative defense," same is essentially a reservation of Defendant's alleged "right to amend their Answer to include additional defenses as they become available…" [D.E. 1-4, pg 67 of 71]. As Plaintiffs timely filed a reply to said answer and affirmative defenses whilst this matter remained pending in state court [D.E. 1-4, pg. 69 of 71], no further pleadings were permissible without leave of court or consent of the

Plaintiffs admittedly possess the burden of proof to prove that a covered cause of loss, to wit, a windstorm such as Hurricane Irma, caused direct physical loss to the insured property.  Based on the incontrovertible testimony regarding same, such a burden is clearly met thereby shifting the burden to the Defendant to prove its exclusions.  As no exclusionary provisions related to causation have been raised by the Defendant as affirmative defenses, this Honorable Court must grant summary judgment on the issue of coverage in favor of the Plaintiffs.

Additionally, Defendant's only true affirmative defense raises issues regarding compliance with post-loss conditions precedent to coverage, namely the alleged failure to provide prompt notice and preserve and protect the damaged property.  While it is the Plaintiffs' position that there was no such non-compliance, even in the event this Court finds that such a material breach occurred, the Defendant's prejudice is absolutely nonexistent.  The Defendant failed to adjust the loss, request documents, request an examination under oath, or interview any witnesses.  Because a party cannot create its own prejudice and benefit from it, and the Defendant failed to gather, let alone request, any information that could have alleviated its prejudice, Defendant's first affirmative defense fails as a matter of fact and law.

As there are no genuine issues of material fact, Summary Judgment in Plaintiffs' favor is proper.

## <u>STATEMENT OF MATERIAL FACTS</u>

1.      Plaintiffs purchased an insurance policy, policy number BW0162517, from Defendant for their home located at 15102 Frescott Way, Naples, FL 34110 (hereinafter the "Subject Property"), which provided coverage from May 9, 2017, through May 9, 2018.  *See* the Subject Policy [D.E. 5-1].  The Subject Policy contains a 3% windstorm deductible based on the

---

parties.  *See* Fla. R. Civ. P. 1.190(a)(2020) and Fed. R. Civ. P. 15(a)(2020).  Additionally, the Defendant has not moved for leave to amend its affirmative defenses at any time during this lawsuit, and certainly not before the deadline to amend pleadings outlined in this Honorable Court's Case Management and Scheduling Order [D.E. 18].

Coverage A limit of liability.  [D.E. 5-1, pg. 45 of 71].  As the Coverage A limit of liability is $3,400,000.00, the total deductible is $102,000.  [D.E. 5-1, pg. 6 of 71].

2.      On July 14, 2016, prior to the binding of the Subject Policy, a "new business" inspection took place of the Subject Property which listed the condition of the roof as "acceptable."  A copy of volume one of the deposition transcript of Joshua Porter, Defendant's corporate representative, has been previously filed as **D.E. 36-3** and is hereinafter referred to as "Porter I Dep."  Porter I Dep. 61:13-63:24

3.      Plaintiffs allege that, on or about September 10, 2017, the Subject Property sustained damages as a result of Hurricane Irma.  *See* Plaintiffs' Complaint [D.E. 1-1, ¶ 8].

4.      When the Plaintiffs returned to the Subject Property after having evacuated for Hurricane Irma, they observed at least two large trees had fallen onto their roof and lanai screen enclosure.  A copy of the deposition transcript of William McCracken is attached hereto as **Exhibit "1"** and is hereinafter referred to as "McCracken Dep."  W. McCracken Dep. 21:3-8.  In fact, Angel Saavedra, who has been providing regular lawn maintenance to the Subject Property since May 2016, was present at the property immediately before and immediately after Hurricane Irma and took photographs of the observable damages.   Copies of the affidavit of Angel Saavedra and Ex. A to the affidavit are attached hereto as **Exhibit "2"** and the affidavit is hereinafter referred to as "Saavedra Aff."    Saavedra Aff. ¶¶ 2-5 & Ex. A.  Specifically, Mr. Saavedra noted that the damages observed and depicted in his photographs taken on September 12, 2017, were not present at the Subject Property prior to the Hurricane on September 5, 2017. Saavedra Aff. ¶¶ 4-5.

5.      In January 2018, Tim Adams from St. Raphael Roofing inspected the Subject Property and observed that the roof was damaged as a result of Hurricane Irma.  A copy of the

deposition transcript of Tim Adams is attached hereto as **Exhibit "3"** and is hereinafter referred to as "Adams Dep." Adams Dep. 11:3-13; 13:12 – 14:16. In fact, he determined that there were 75 damaged tiles throughout the roof as a result of Hurricane Irma. Adams Dep. 14:17-20; 18:12 – 19:3. He also noted that there could have been additional damaged tiles where the damage was not immediately observable but manifested later. Adams Dep. 38:12-17

6.       At that time, St. Raphael Roofing repaired the roof using tiles that were sufficient for a temporary repair but did not properly interlock with the existing tiles on the roof of the Subject Property. Adams Dep. 21:20 – 22:14; 50:19 – 51:5. The tiles originally installed are "Monier Lifetile" tiles which are no longer in production. Adams Dep. 22:2-3; 65:8-9 (Executed Jurat Page). The tiles utilized in the repairs by St. Raphael were "Eagle Capistrano" tiles which do not fit correctly. Adams Dep. 49:3-11. "Eagle Capistrano" tiles are slightly longer and does not align properly with "Monier Lifetile" tiles. Adams Dep. 51:18 – 52:23.

7.       On January 11, 2018, the Plaintiffs, through their agent, reported a claim. Porter I Dep. 12:24-25. At the time of the initial reporting, the Plaintiffs' agent reported a special assessment for damages levied against the Plaintiffs as a result of Hurricane Irma. Porter I Dep. 15:15-18. The Defendant designated the initially reported claim with claim number 4149943. Porter I Dep. 15:19-23.

8.       The Defendant's only adjustment of the claim at this time was two attempts at calling the Plaintiffs and sending a below deductible letter. Porter I Dep. 16:20 – 17:6; 17:16 – 18:6. No other correspondence, not a reservation of rights correspondence or anything advising the Plaintiffs that attempts to contact them had been futile thus far, were sent and no investigation was performed. Porter I Dep. 18:7-22; 36:4 – 37:16. The Defendant did not call the Plaintiffs' agent who reported the claim, did not reach out to the homeowners' association to

determine what damages were sustained, did not conduct any research to determine the extent of damages sustained to Plaintiffs' neighborhood, did not call the Plaintiffs' roofer, and did not do any independent research of its own prior to sending the below deductible letter.  Porter I Dep. 20:13 – 21:4; 21:16 – 22:13; 44:1-17.

9.      On October 18, 2019, the claim was reopened through the furnishing of a supplemental loss notice.  Porter I Dep. 24:19-25.  The supplemental claim noted that there was damage to the roof from Hurricane Irma resulting in leaks inside the living room damaging the drywall and molding.  Porter I Dep. 26:8-11.  This aspect of the claim was reported after Mr. McCracken determined the damages would exceed the massive hurricane deductible contained within the Subject Policy.  W. McCracken Dep. 37:9-24.  This realization was reached due to the engineering report dated October 14, 2019, prepared by the Plaintiffs' engineer.  A copy of the deposition transcript of Chris Sargent is attached hereto as **Exhibit "4"** and is hereinafter referred to as "Sargent Dep."  Sargent Dep. 15:15-21

10.     On October 22, 2019, the Defendant called the Plaintiffs and spoke with Mr. McCracken.  Porter I Dep. 26:22 – 27:9.  During the initial call with Mr. McCracken, the Defendant was advised of the details of the loss and that repairs were effectuated to the roof of the Subject Property.  Porter I Dep. 27:10-17.  The Defendant did not make any inquiry as to who performed the repairs to the property at that time.  Porter I Dep. 27:25 – 28:2.  It must be noted that the Defendant does not contend that the roof repairs effectuated by the insureds were not reasonable or necessary.  A copy of volume two of the deposition transcript of Joshua Porter, Defendant's corporate representative, is attached hereto as **Exhibit "5"** and is hereinafter referred to as "Porter II Dep."  Porter II Dep. 7:24 – 8:1.  Subsequently, on that date, Mr. McCracken provided the Defendant with a copy of his engineering report.  Porter I Dep. 30:2-12.

11.     The engineering report provided by the Plaintiffs was prepared by Christopher Sargent, P.E. as a result of an inspection which took place on September 18, 2019.  Sargent Dep. 60:8-10.  Mr. Sargent was able to walk the entire roof at the Subject Property and determine whether the tiles were loose.  Sargent Dep. 19:1-18.  He identified 78 roof tiles that were damaged, loose, or cracked which were all attributable to Hurricane Irma.  Sargent Dep. 33:4-20. Based on this investigation, Mr. Sargent was able to form the opinion that more than 25% of the roof at the Subject Property required repairs as a result of damage sustained by Hurricane Irma. Sargent Dep. 40:17 – 41:5.

12.     On February 21, 2020, despite all of the different manners in which the Defendant could have continued or completed its adjustment of Plaintiffs' claim but chose not to, the Defendant sent a denial letter to the Plaintiffs establishing Defendant's coverage position.  Porter I Dep. 83:12-15; 85:5-11.  The denial was based on Plaintiffs' alleged failure to provide prompt notice, failure to keep an accurate record of repair expenses, failure to allow the Defendant to inspect the damaged property, as well as wear and tear and deterioration.  Porter I Dep. 97:10-16. This was, in part, based on the causation findings of the Defendant's engineer who determined that the damages present were as a result of wear and tear as well as deferred maintenance. Porter I Dep. 108:21 – 111:1.

13.     Had the Defendant thought to complete an actual adjustment of the claim, it could have contacted both the Club at Mediterra as well as the Mediterra Community Association, the two associations surrounding the Subject Property which assessed the Plaintiffs as a result of Hurricane Irma damages.  W. McCracken Dep. 42:5-12.  The Mediterra Community Association is the homeowners association which encompasses the Subject Property.  A copy of the affidavit of Kenneth Tarr, Corporate Representative of the Mediterra Community Association, is attached

hereto as **Exhibit "6"** and is hereinafter referred to as "Tarr Aff."  Tarr Aff. ¶ 4.  The Mediterra

Community Association sustained $1,070,177 in damages from Hurricane Irma causing uprooted

and blown over trees resulting in damages to the surrounding structures.  Tarr Aff. ¶¶ 5-6.

Additionally, the Club at Mediterra operates the clubhouse, fitness center, and two golf courses

which are adjacent to the Subject Property.  A copy of the affidavit of Rick Leitman, Corporate

Representative of the Club at Mediterra, is attached hereto as **Exhibit "7"** and is hereinafter

referred to as "Leitman Aff."  Leitman Aff. ¶ 3.  The Club at Mediterra sustained $1,832,229.92

in damages from Hurricane Irma caused by uprooted and blown over trees resulting in damages

to the surrounding structures.  Leitman Aff. ¶¶ 4-5.

14.     Instead, the only thing done by the Defendant to investigate the supplemental

claim was the retention of an engineer, Aaron Duba, P.E.  Porter I Dep. 29:4-10.  The Defendant

did not hire a field adjuster to inspect the Subject Property.  Porter I Dep. 42:21-23.  The

Defendant did not hire a roofer to inspect the roof.  Porter I Dep. 44:1 – 3.  Similarly, the

Defendant did not make any attempt to speak with the roofer who performed the repairs at the

Subject Property.  Porter I Dep. 44:4-11.  The Defendant claims they did not speak with the

Plaintiffs' roofer because they were not provided with information regarding same; however, the

Defendant never requested this information.  Porter I Dep. 44:12-17; 58:4-11; 102:10-19.  In

fact, the Defendant did not feel as though such documents, documents which depicted the

condition of the Subject Property immediately after Hurricane Irma and prior to repairs being

effectuated, were needed prior to denying the Plaintiffs' claim.  Porter I Dep. 82:9 – 83:11;

102:20 – 103:1.

15.     The Defendant clearly knew that they could have asked the Plaintiffs permission

to contact third parties hired by the Plaintiffs in order to discuss the facts surrounding the claim

as the Defendant facilitated such permission of the Plaintiffs to allow engineers hired by the parties to speak with one another. Porter I Dep. 73:4-23. In fact, the Defendant agreed specifically that the Plaintiffs complied with all requests made of them, did not interfere in the adjustment of the claim in any way, and otherwise cooperated with all of the Defendant's requests throughout the investigation of the claim. Porter I Dep. 95:1 – 96:1. Had the Defendant performed any kind of adjustment or investigation and requested documents, the following documents, provided as part of the response to Defendant's Requests for Production previously filed under **D.E. 36-4 & 4-A**, could have been provided: Invoices for landscaping services by Angel Saavedra Lawn Maintenance from before and after Hurricane Irma, including those related to the storm [PLTF000137 – PLTF000145, PLTF000198 - PLTF000200, PLTF000202, PLTF000213 - PLTF000215, PLTF000217], photographs from September 12, 2017, taken by Mr. Saavedra [PLTF000232 - PLTF000240], invoices from Harwick Homes, the Plaintiffs' general contractor, who performed repairs to the Subject Property after Hurricane Irma [PLTF000146, PLTF000149, PLTF000151, PLTF000201, PLTF000203, PLTF000208, PLTF000218, PLTF000223, PLTF000467 - PLTF000469, PLTF000473 - PLTF000476], reports from Saint Raphael Roofing, Inc., the subcontractor who performed roof repairs at the Subject Property and identified hurricane damages at the Subject Property [PLTF000460 - PLTF000466, PLTF000470 - PLTF000472], photographs from the Club at Mediterra depicting the surrounding areas after the hurricane [PLTF000485 - PLTF000536], and various other invoices related to work at the Subject Property after Hurricane Irma [PLTF000147 - PLTF000148, PLTF000153 - PLTF000162, PLTF000204 - PLTF000207, PLTF000209 - PLTF000212].

16.     Mr. Duba similarly did not perform a thorough analysis of the situation before coming to his opinion.[2] Mr. Duba testified that his opinion in the instant matter was based solely on his pre-litigation inspections.  A copy of the deposition transcript of Aaron Duba, P.E., has been previously filed under **D.E. 36-2** and is hereinafter referred to as "Duba Dep." Duba Dep. 108:24 – 109:8. As part of his business practice, Mr. Duba claims to "take all of the information when formulating [his] opinions. Duba Dep. 39:3-4.  However, during his investigation, he did not recall requesting any additional documents or information from the Plaintiffs in order to formulate his opinion despite acknowledging that same would have been helpful.  Duba Dep. 53:16 – 55:6; 80:1 – 81:5; 82:17 – 83.3.  Despite extensive documentation produced during the discovery process of this matter, none of said documents, including the repair records and photographs depicting damage to the property immediately following Hurricane Irma, were provided to Mr. Duba besides the Plaintiffs' presuit engineering report.  Duba Dep. 59:8 – 60:6; 70:13-16; 100:10-19; 102:19 – 103:1.

17.     Furthermore, this denial was based, in part, on Defendant's position that there were no damages as a result of Hurricane Irma but, rather, from numerous excluded causes of loss.  Porter I Dep. 114:11-14; 115:23 – 116:21.  Despite this contention, and even in light of the fact that Mr. Duba did not perform a thorough enough investigation or review all available documentation prior to his deposition, Mr. Duba, Defendant's expert engineer and sole person responsible for an inspection of the Subject Property on behalf of the Defendant as part of the claim, specifically testified that he noted damages to the Subject Property attributable to Hurricane Irma.  Duba Dep. 99:22 – 100:4.

---

[2] A Motion to Strike Mr. Duba based on the *Daubert* standard of admissibility of expert testimony has been filed as [D.E. 36] due to Mr. Duba's failure, in pertinent part, in obtaining sufficient facts or data upon which to base his opinion.

## <u>MEMORANDUM OF LAW</u>

I.   **LEGAL STANDARD**

   a.  **Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure "mandates an entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotext Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he burden on the moving party may be discharged by 'showing' – this is, pointing out to the district court –that there is an absence of evidence to support the nonmoving party's case."  *Id*. at 325; *see also Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted).   "A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Dominguez v. Lake Como Club*, 520 Fed. Appx. 937, 939 (11th Cir.2013) (citing Fed. R. Civ. P. 56(e); *Eberhart v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990)).   Issues of fact are genuine only if a reasonable jury, considering the evidence presented, could find for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 (1986).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

   b.  **The *Erie* Doctrine Applies**

The *Erie* Doctrine stands for the principle that, when a federal court exercises diversity jurisdiction, said court must apply the substantive law of the forum state whilst adhering to federal procedural law.  *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188

(1938); *see also Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1257 (11th Cir.

2011), *certified question answered*, 107 So. 3d 362 (Fla. 2013); *Burger King Corp. v. E–Z

Eating, 41 Corp.,* 572 F.3d 1306, 1313 n. 9 (11th Cir.2009).  As this matter was removed to this

Honorable Court under diversity jurisdiction [D.E. 1, ¶ 7]., the *Erie* Doctrine applies thereby

warranting application of substantive Florida law to the facts at hand.

## II.   THE INCONTROVERTIBLE EVIDENCE ESTABLISHES THAT THE PLAINTIFFS HAVE MET THEIR BURDEN OF PROOF.

### a.   As the Subject Policy is a "named perils" policy, the burden of proof is on the Plaintiffs to establish that a covered peril occurred during the policy period, a burden which the Plaintiffs have unequivocally met.

#### i.   The Subject Policy is a "named perils" policy.

Florida law is clear and well established with regards to the burden of proof in actions

stemming from a property insurance contract:

> [T]he very nature of the term 'all risks' must be given a broad and comprehensive
> meaning as to the covering of any loss other than a willful and fraudulent act of
> the insured. Of course, despite the presence of the 'all risks' provision, the loss is
> not covered if it comes within any specific exclusion contained in the policy.  In
> insurance policies, the general rule of evidence that the burden of proving a
> particular issue or of proving an entire action is upon the party who will be
> defeated if no evidence relating thereto is given on either side is fully applicable.
> The burden of proving an avoidance of the action on the basis that the loss is not
> covered, since it comes within a specific exclusion contained in the policy is upon
> the insurer.  [Citation omitted]

*Phx. Ins. Co. v. Branch*, 234 So. 2d 396, 398 (Fla. 4th DCA 1970) distinguished on other

grounds.  *See also Citizens Prop. Ins. Corp v Munoz,* 158 So. 3d at 674.  ("Generally, an insured

seeking coverage pursuant to an 'all-risks' policy must prove that a loss occurred to the property

during the policy period.  [Citation omitted]  If the insured meets this initial burden, the burden

shifts to the insurer to show that the loss resulted from an excluded cause.  [Citation omitted]

The insured does not need to disprove any excluded causes.").

"If the policy is a named perils policy, however, the insured has the burden of proving that the damage occurred by a covered cause." *See Morrison Grain Co., Inc. v. Utica Mut. Ins. Co.*, 632 F.2d 424, 429 (5th Cir.1980); *Royale Green Condo. Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 07-21404-CIV-COOKE, 2009 WL 799429, at *2 (S.D. Fla. Mar. 24, 2009).  In reading the above cases together, the burden of proof in a "Named Perils" policy begins with the Plaintiff carrying the burden of establishing that the damage was caused by a covered cause of loss and, in the event this burden is met, the insurer then has the burden of proving its exclusions. *Citizens Prop. Ins. Corp. v. Kings Creek S. Condo, Inc.*, 300 So. 3d 763, 765 (Fla. 3d DCA 2020)("Under a named perils insurance policy, [the insured] bore the burden to prove that wind, as a covered cause of loss under the policy, caused the damage to the buildings.")[citations omitted].  Such is the burden of proof in the instant matter.

> ii. **By presenting competent and incontrovertible evidence that Hurricane Irma caused damage to the Subject Property, the Plaintiffs have met their burden of proof.**

In the matter *sub judice*, the collective testimony conclusively establishes that there was no damage to the property prior to Hurricane Irma and that the Subject Property was damaged as a result of Hurricane Irma.  This is established through both expert and lay witness accounts of the loss.  This undisputable testimony leads to the only one possible conclusion: Hurricane Irma caused damage to the Subject Property which allowed water to enter.  Because there is no other explanation which may be reasonably set forth, there can be no question that the Plaintiffs have met their burden of showing that a windstorm, namely Hurricane Irma, a covered cause of loss, damaged the Subject Property.

This is particularly important given the testimony of the parties' experts.  Defendant's engineer acknowledges that the property was damaged by Hurricane Irma but somehow reaches

the conclusion that none of the damage claimed is attributable to Hurricane Irma.  This opinion is in blatant contradiction of the established record that water intrusion did not occur until during and after Hurricane Irma and comes without having reviewed all of the available documentation which conclusively establishes that Hurricane Irma caused a loss.  Conversely, Plaintiffs' roofer, after having seen the property firsthand and witnessing damages directly attributable to Hurricane Irma, opined that a covered loss did, in fact, occur.  This falls directly in line with the lay testimony that such damages were not present before the date of loss but were present at an inspection which took place within 48 hours of the hurricane.  *See Quarry v. Gateway Estates Park Condo. Ass'n*, 249 So. 3d 1287, 1295 (Fla. 1st DCA 2018), *reh'g denied* (Aug. 7, 2018) ("Causation can be established by both expert testimony and circumstantial evidence.") (citing *Gant v. Lucy Ho's Bamboo Garden, Inc.*, 460 So.2d 499 (Fla. 1st DCA 1984); *Smith v. Airtran Airways, Inc.*, 744 F.Supp.2d 1274, 1278 (M.D.Fla.2010) ("Causation may be proved by direct or circumstantial evidence.) (citing *Rustowicz v. N. Broward Hosp. Dist.*, 174 So. 3d 414, 425 (Fla. 4th DCA 2015); *see also Brown v. Glade & Grove Supply, Inc.*, 647 So.2d 1033, 1036 (Fla. 4th DCA 1994).

> **b. Because the Defendant has not raised any causation defenses, the Defendant cannot meet their burden to show that the loss was otherwise excluded and, therefore, cannot rebut Plaintiffs' conclusive establishment that the damages in question are covered.**

Once the Plaintiffs have met their initial burden of proof, the burden then shifts to the Defendant to prove its defenses.  *See*, *generally*, *Branch* & *Munoz*, *supra*.  The Plaintiffs concede that the Defendant does not need to plead any such defenses in order to challenge the Plaintiffs' ability to meet its burden of showing that a covered cause of loss occurred; however, once the burden as been met, the Defendant must prove its exclusions and such exclusions must be plead

as affirmative defenses. *Citizens Prop. Ins. Corp. v. Kings Creek S. Condo, Inc.*, 300 So. 3d at 766 (Fla. 3d DCA 2020).

In *Citizens v. Kings Creek*, Citizens, the insurer, issued a "named perils" policy covering loss caused by wind. *Id.* As its Affirmative Defense, Citizens asserted that the insured could not meet its burden of proof. *Id.* at 765-6. The insured, relying on S*t. Paul Mercury Insurance Company v. Coucher*, 837 So. 2d 483, 487 (Fla. 5th DCA 2002); *Florida Farm Bureau General Insurance Company v. Insurance Company of North America*, 763 So. 2d 429, 432 (Fla. 5th DCA 2000); and *Peninsular Life Insurance Company v. Hanratty*, 281 So. 2d 609, 611 (Fla. 3d DCA 1973), argued that Citizens was required to plead its policy exclusions as affirmative defenses in order to negate coverage for same. *Id.* at 766. In response, the appellate court agreed with the insured on a technical basis but asserted that "[b]ecause this is a named perils policy, if [the insured] fails to prove that the damage resulted from a named peril, the damage is simply not covered. Thus, Citizens is not required to prove a policy exclusion as the basis for its defense." *Id.* As such, there is no doubt that the Defendant may challenge causation of damages for the purpose of impeding the Plaintiffs' ability to meet its initial burden of proof.

With that said, as is the case here, once the Plaintiffs have met their burden of proof, the exclusions upon which the Defendant is to rely must be pled as affirmative defenses. "An affirmative defense is generally a defense that, if established, requires judgment for the defendant even if the plaintiff can prove his case…" *Luxottica Grp. S.P.A. v. Cash Am. E., Inc.*, 198 F. Supp. 3d 1327, 1328 (M.D. Fla. 2016) *citing Wright v. Southland Corp.*, 187 F.3d 1287, 1303 (11th Cir.1999). Said another way in relation to the instant case, an affirmative defense, once established, will allow the Defendant's denial of coverage to stand even in the face of the Plaintiffs having proven that a covered cause of loss occurred during the applicable policy

period. Because the Defendant did not plead any causation defenses, namely, the causation defenses upon which it relied in an attempt to defeat the Plaintiffs' ability to establish its burden of proof, the Defendant cannot proffer any exclusions for use in attempting to meet its own burden.

> **c. Even though the Defendant proffers a different story as to the cause of loss, because Defendant's position is not based on the available evidence or facts of the loss, such position does not prevent the entry of summary judgment and should be disregarded by this Honorable Court**

Of the parties' presentations of the claim, Plaintiffs' falls directly in line with the undisputable evidence while Defendant's Corporate Representative and sole expert provide opinions contrary to all established record evidence to the point where no reasonable juror could believe such opinion. Both of the Defendant's witnesses have opined that the damages to the roof were caused by excluded causes of loss, to wit, wear and tear, deterioration, faulty workmanship, etc; however, such opinions are the result of a lack of proper claims adjustment which resulted in insufficient data leading to an improper pyramiding of inferences.

The *Erie* doctrine does not apply to questions regarding evidence such as the admissibility of stacked inferences as same is a procedural evidentiary issue. *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1323–24 (11th Cir. 1982) *citing Boeing Co. v. Shipman*, 411 F.2d 365, 368–70 (5th Cir.1969) (en banc) (holding that federal law controls questions of the sufficiency of the evidence in state law claims.) (overruled by *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1323–24 (11th Cir. 1982) on separate grounds). To that point, Federal Courts, including this Honorable Court, have held that, while inferences upon inferences are permissible, such inferences must be reasonable. *Bleers v. Wal-Mart Stores E., LP*, No. 2:19-CV-806-SPC-NPM, 2021 WL 2106531 (M.D. Fla. May 25, 2021). Citing to multiple 11th Circuit cases, this Honorable Court in *Bleers* opined as follows:

So what's a reasonable inference? It must be more than "a guess or a possibility, for such an inference is not based on the evidence but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1982) (cleaned up). The inference must be "one that reasonable and fair-minded [people] in the exercise of impartial judgment might draw from the evidence." *Id.* at 1326 (cleaned up).  On this point, many state-court cases are misleading because they bar stacking or pyramiding inferences.  But federal courts do not necessarily care about stacked inferences. Rather, the question is whether they are reasonable. *Id.* at 1323-24 ("According to federal law there is no prohibition against pyramiding inferences; instead all inferences are permissible so long as they are reasonable.").2 To be sure, the ultimate inference becomes more "attenuated" with each layer stacked. *Salter v. Westra*, 904 F.2d 1517, 1525 & n.13 (11th Cir. 1990). Yet this does not bar building an inferential house of cards…

*Id.* at 1.  As such, while an inference may be based on a prior inference, such inferences must be reasonable.  In order for an inference from an expert witness to be reasonable, so too must it derive from sufficient facts and data.  Fed. R. Civ. P. 702(b) (2021).  As Defendant's position is not based on the established evidence nor an adequate base upon which to stack subsequent inferences, the conflict in opinion does not prevent the entry of Summary Judgment in favor of the Plaintiffs because this Honorable Court "should not adopt that version of the [Defendant's engineer's unsubstantiated] facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, *supra* (2007).

**WHEREFORE**, for the foregoing reasons, Plaintiffs, WILLIAM MCCRACKEN AND JANIS MCCRACKEN, respectfully request that this Honorable Court grant their Motion for Summary Judgment with regards to the Plaintiffs having met their burden of proof, find as a matter of fact and law that a covered cause of loss occurred during the applicable policy period, find that the Defendant did not plead and, therefore, cannot prove any exclusions to coverage, and grant any and all other relief this Court deems just and proper.

**III.   THE PLAINTIFFS COMPLIED WITH ALL POST-LOSS CONDITIONS REQUIRED OF THEM AND, EVEN ASSUMING ARGUENDO THEY DID NOT, THE DEFENDANT WAS NOT PREJUDICED IN ANY WAY OTHER THAN BY ITS OWN FAILURE TO ADEQUATELY ADJUST THE CLAIM.**

**a.   Whether the Court may grant a forfeiture of coverage related to a defense asserting that the Plaintiffs failed to comply with conditions precedent requires a two-prong analysis.**

Insurance policies contain two (2) general types of post-loss conditions: "compulsory" conditions, *i.e.*, conditions that must be fulfilled with or without the request from an insurer, and "cooperation" conditions, *i.e.*, conditions that must be fulfilled upon the request of an insurer. See *Rodrigo v. State Farm Fla. Ins. Co.*, 144 So. 3d 690, 692 (Fla. 4th DCA 2014) and *State Farm Mut. Auto. Ins. Co. v. Curran*, 135 So. 3d 1071, 1072 (Fla. 2014), respectively.  The "notice" provision is a subset of the "compulsory" post-loss condition category.  *See Bankers Ins. Co. v. Macias*, 475 So. 2d 1216 (Fla. 1985).  Accordingly, the policy provisions which require an insured to provide prompt notice and protect the property from further damage by making reasonable and necessary repairs without the insurer having to request same would be categorized compulsory post-loss conditions.  Conversely, the standard provision requiring that an insured show the damaged property as often as reasonably required would be considered a cooperation condition.

Normally, "[a] material breach of an insured's duty to comply with a policy's condition precedent relieves the insurer of its obligations under the contract." *Starling v. Allstate Floridian Ins. Co.*, 956 So. 2d 511, 513 (Fla. 5th DCA 2007).  A total failure to comply with a policy provision amounts to a breach of the policy precluding recovery.  *Haiman v. Federal Insurance Co.*, 798 So.2d 811 (Fla. 4th DCA 2001); s*ee also Starling v. Allstate, supra.*  "If, however, the insured cooperates to some degree or provides an explanation for its noncompliance, a fact question is presented for resolution by a jury." *Haiman* at 812 (quoting *Diamonds & Denims,*

*Inc. v. First of Georgia Ins. Co.*, 417 S.E.2d 440, 441–42 (Ga.Ct.App.1992)).  That said, "[i]n Florida, different presumptions arise depending on which duty has been breached."  *Macias* at 1217.

"The question of whether an insured's untimely reporting of loss is sufficient to result in the denial of recovery under the policy implicates a two-step analysis… The first step in the analysis is to determine whether or not the notice was timely given… If the notice was untimely, then prejudice to the insurer is presumed… However, the presumption of prejudice to the insurer 'may be rebutted by a showing that the insurer has not been prejudiced by the lack of notice.'" *LoBello v. State Farm Florida Ins. Co.*, 152 So. 3d 595, 599 (Fla. 2d DCA 2014) quoting *Macias* at 1218 (additional citations omitted); *see also Am. Integrity Ins. Co. v. Estrada*, 276 So. 3d 905 (Fla. 3d DCA 2019) *(*setting forth the analysis that it is the carrier's burden to prove a material breach of a post loss condition and, if adequately established, the policyholder's burden to show why the carrier was not prejudiced).

It must be noted, however, that Florida law "abhors" forfeiture of insurance coverage. *Estrada*, 276 So. 3d at 914 (Fla. 3d DCA 2019) *citing Axis Surplus Ins. Co. v. Caribbean Beach Club Ass'n, Inc.*, 164 So. 3d 684, 687 (Fla. 2d DCA 2014). "Moreover, '[p]olicy provisions that tend to limit or avoid liability are interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy.'"  *Bethel v. Sec. Nat'l Ins. Co.*, 949 So. 2d 219, 223 (Fla. 3d DCA 2006) *quoting Flores v. Allstate Ins. Co.*, 819 So. 2d 740, 744 (Fla. 2002).

### b.  The undisputable facts establish as a matter of fact and law that timely notice was provided to the Defendant.

As part of the Defendant's first affirmative defense, the Defendant asserts that the Plaintiffs failed to "provide prompt notice of the loss."  [D.E. 1-2, pg. 5 of 7].  Notice requirements in insurance contracts take many forms, such as "prompt," "immediate," "as soon

as practicable," etc.  These terms do not require instantaneous notice to the insurer of the loss, but require notice "within reasonable dispatch and within a reasonable time in light of all the facts and circumstances of each particular case."  *American Fire and Cas. Co. v. Collura*, 163 So. 2d 784, 793 (Fla. 2d DCA 1964).  The standard of reasonableness "is applied to a person in the position of the party .... Thus, the standard is case specific."  *David v. Textor*, 189 So. 3d 871, 876 n.1 (Fla. 3d DCA 2016) (citation omitted).  To that point, the issue of the reasonableness as it relates to the timeliness of reporting must be considered in conjunction with the hurricane deductible contained within the Subject Policy.

In the instant matter, the initial claim that was reported related to the loss assessment was summarily determined to fall below the deductible contained within the Subject Policy.  "A "deductible" is "a clause in an insurance policy that relieves the insurer of responsibility for an initial specified loss of the kind insured against." *Gen. Star Indem. Co. v. W. Fla. Vill. Inn, Inc.*, 874 So. 2d 26, 33 (Fla. 4th DCA. 2004) citing *Merriam–Webster's Collegiate Dictionary* 471 (deluxe ed. 1998).  "Generally, the functional purpose of a deductible, which is frequently referred to as self-insurance, is to alter the point at which an insurance company's obligation to pay will ripen." *Id. citing Int'l Bankers Ins. Co. v. Arnone*, 552 So.2d 908, 911 (Fla.1989).  While the court in *West Florida Village* notes that "[a] deductible loses is meaning entirely if it is to apply to a loss that is not covered by the policy," *id.*, so too would it render the deductible useless if an insured was required to report every aspect of a claim even if they knew the deductible would not be met or exceeded.  To this point, even if the initial reporting of the claim did not include a complete recitation of all of the damages, the fact that the Plaintiffs' provided supplemental notice upon realization that the loss now exceeded the deductible renders the notice timely as a matter of fact.

Typically speaking, the question of timeliness presents an issue of fact for the jury; however, based on the circumstances surrounding Hurricane Irma and the testimony provided throughout this matter, there is no question that notice was provided in a timely manner, or, in the alternative, no such prejudice existed. First, the Plaintiffs initially reported a claim to the Defendant within approximately three months of the date of loss related to the special assessments for damages levied against them by their surrounding associations. At the time, the Defendant did not perform any kind of adjustment or make any inquiry as to the extent of any damages sustained. Then, upon realizing that their damages would exceed their deductible, thereby exceeding the self-insurance portion of the loss, the Plaintiffs reported their supplemental claim within four days of learning same. The Defendant even utilized the same claim number for the initial claim as it did for the supplemental claim indicating that it considered the loss to be one in the same.

As such, when viewing the notice provision liberally in the light most favorable to the Plaintiffs, there is no doubt that notice was timely provided for this claim.

### c. The Plaintiffs performed reasonable and necessary repairs to protect the property from further damage and kept an accurate record of repair expenses.

Additionally, as part of the Defendant's first affirmative defense, the Defendant asserts that the Plaintiffs failed to "preserve and protect the property." [D.E. 1-2, pg. 5 of 7]. While it is true that some damages were repaired prior to the Defendant's initial inspection, there were damages present for the Defendant's inspection and the Defendant has stated that it has no reason to contend that the roof repairs were not reasonable or necessary. The Plaintiffs maintained extensive records regarding their repairs, none of which were requested pre-suit, but

all of which have been provided to the Defendant as part of litigation.  As such, it is clear that the

Plaintiffs both preserved and protected the property as a matter of fact.

> **d.  Assuming *arguendo* that it is determined that timely notice was not provided, or that the Plaintiffs failed to preserve and protect the Subject Property, the Plaintiffs are able to rebut the presumption of prejudice based on the litany of information that established a covered cause of loss occurred which the Defendant did not request nor require prior to denying the claim.**

In a legal sense, the term prejudice is defined as "injury or damage resulting from some

judgment or action of another in disregard of one's rights."  *Merriam-Webster Online*.  In the

event there is a finding that the Plaintiffs somehow failed to comply with policy conditions, there

is a presumption of prejudice granted in the Defendant's favor.  In such a case, "[t]he burden

should be on the insured to show lack of prejudice where the insurer has been deprived of the

opportunity to investigate the facts [.]"  *Gemini II Ltd. v. Mesa Underwriters Specialty Ins. Co.*,

592 F. App'x 803, 807 (11th Cir. 2014) *citing Macias*, 475 So.2d at 1218.  Therein lies the

application of the definition of prejudice in the instant matter – whether there was injury or

damage to the Defendant such that they were deprived of the opportunity to investigate the facts.

*See Walton v. St. Paul Fire & Marine Ins. Co.*, No. 17-61391-CIV, 2018 WL 5098965, at *21

(S.D. Fla. Aug. 10, 2018), report and recommendation adopted in part, No. 17-61391-CIV, 2018

WL 5098833 (S.D. Fla. Sept. 4, 2018) ("Where an insurer has an opportunity to investigate a

claim and deny it on other grounds than late notice, that 'effectively rebuts any presumption of

prejudice arising from the late notice'") *citing Keenan Hopkins Schmidt and Stowell*

*Contractors, Inc. v. Continental Cas. Co.*, 653 F. Supp. 2d 1255, 1263 (M.D. Fla. 2009) (despite

late notice, insurer still had multiple months to investigate claim and then denied claim on two

grounds); *see also Alina Montenegro Happy Dreams Learning Ctr. v. Nautilus Ins. Co.*, No. 20-

24323-CIV, 2021 WL 4991099 (S.D. Fla. Oct. 7, 2021) (Finding that prejudice could be rebutted

by a showing that the carrier was able to investigate the claim sufficiently to permit it to deny the claim on grounds other than a lack of prompt notice.).   Of course, based on Defendant's corporate representative's testimony, the Defendant was provided with all information it requested and did not require any further information in order to render a complete coverage determination.

Defendant's corporate representative, the same individual who served as the main adjuster during the adjustment of the claim, knew full well that he could request permission from the insureds to have an insurance company representative speak directly with any of the people involved in the maintenance, inspection, or repair of the Subject Property on the insureds' behalf; however, this was only done on one occasion – to bolster the basis for denial by having the parties' engineers meet at the Subject Property.  The Defendant did not make any attempt to speak with Angel Saavedra, the insureds' handyman who was at the property immediately before and immediately after the storm, Harwick Homes, the Plaintiffs' general contractor, or St. Raphael Roofing, the roofers who inspected the subject property after the storm and determined in no uncertain terms that the roof was damaged as a result of Hurricane Irma.  Similarly, the Defendant did not speak with, nor request to speak with, anyone from either the Mediterra Community Association nor the Club at Mediterra.  The Defendant's corporate representative has testified that the insureds were cooperative with regards to the claim and there was nothing requested of the insureds which was met with a lack of compliance.  The only reason the Defendant has for its lack of information is its own failure to request the information or perform any substantive adjustment of this claim.  It must also be pointed out that the Defendant was able to complete its alleged claim investigation to the extent it believed was necessary and arrive at conclusions regarding the causation of damages to the property.  In reality, further investigation

would have provided additional substantive information to the Defendant in favor of coverage so it is clear that the only parties truly prejudiced herein have been the Plaintiffs.

Defendant made no real attempt to adjust this claim because it did not want to uncover any information that would have supported coverage for this loss.  The undisputed evidence establishes that there were damages to the Subject Property as a result of Hurricane Irma.  This comes from eyewitness testimony from Mr. Saavedra and Mr. Adams, as well as photographic evidence from both of them.  All of this evidence, and more, could have been obtained by the Defendant if they had simply asked for it.  The Defendant, through its corporate representative, has admitted that the Plaintiff fully cooperated with their claim investigation so there is no reason to believe that the information would not have been provided if requested.   The Defendant, instead, chose to ignore the available information and now, during litigation, has, on one hand, claimed that it possessed all information necessary to make a coverage decision while, on the other hand, avers to this Court that information was missing thereby preventing a complete coverage determination. on the fact that it believed it possessed all of the information it needed to deny the claim.

It is a well-established tenant of law that "a party cannot create its own prejudice and thereby benefit from it." *Mid-Continent Cas. Co. v. Basdeo*, 742 F. Supp. 2d 1293, 1338 (S.D. Fla. 2010).  This falls directly in line with "[t]he doctrine of unclean hands [which] is designed to prevent courts from granting a party relief from a result the party brought about through its own voluntary acts." *Corrigan v. Vargas*, 277 So. 3d 642, 645 (Fla. 5th DCA 2019), reh'g denied (Aug. 30, 2019). *McCollem v. Chidnese*, 832 So. 2d 194, 196 (Fla. 4th DCA 2002) ("[T]he conduct constituting the unclean hands… must generally be connected with the matter in litigation and must affect the adverse party.").  This is particularly important in the instant matter

as the Defendant turned a blind eye to all available information instead choosing to summarily deny the Plaintiffs' claim without conducting a thorough adjustment.  It is not that the information was not available for the Defendant so much as the Defendant did not request it or believe it needed it.  Here, Defendant only has its own wholly lackluster adjustment to blame for its ability to even begin to claim prejudice.  Because of that, there must be a finding as a matter of both fact and law that the Defendant was in no way prejudiced by Plaintiffs' actions and, therefore, Defendant's first affirmative defenses fails.

**WHEREFORE**, for the foregoing reasons, Plaintiffs, WILLIAM MCCRACKEN AND JANIS MCCRACKEN, respectfully request that this Honorable Court grant their Motion for Summary Judgment, find that as a matter of fact and law the Plaintiffs complied with all post-loss conditions precedent to coverage, or, in the alternative, that the Defendant was not prejudiced in its adjustment of the claim, find that Defendant's second affirmative defense fails as a matter of fact and law, and grant any and all other relief this Court deems just and proper.

Respectfully submitted this day, December 1, 2021, by:

CASSEL & CASSEL, P.A.
Attorneys for Plaintiffs
4000 Hollywood Blvd.
Suite 685-S
Hollywood, FL 33021
t: (954) 589-5504
f: (954) 900-1768
Service: pleadings@cassel.law

*/s/Michael A. Cassel*
**Michael A. Cassel, Esq.**
Florida Bar No. 97065

**{Certificate of Service located on next page}**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on December 1, 2021, the foregoing document was filed with the Clerk of the Court, at which time all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through this Honorable Court's CM/ECF system or in another authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

/s/Michael A. Cassel
**Michael A. Cassel, Esq.**
Florida Bar No. 97065

## SERVICE LIST

Richard Zelonka, Jr., Esq.
Wood, Smith, Henning & Berman LLP
1230 Peachtree Street NE
Suite 925
Atlanta, GA 30309
t: (470) 552-1153
f: (470) 591-4990
Service: rzelonka@wshblaw.com; slytle@wshblaw.com
Attorneys for Defendant